MONTGOMERY AMATUZIO
CHASE BELL JONES, LLP
Taylor G. Ostrowski, WY Bar No. 8-7037
4100 E. Mississippi Ave., 16th Floor
Denver, Colorado 80246
Telephone: (303) 592-6600
tostrowski@mac-legal.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| THE PHOENIX INSURANCE COMPANY, a Foreign Stock Insurance Company. | ) ) ) | |
| | ) | Civil Action No. 5:24-cv-41 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JANE KEMBLE DUNBAR LIVING TRUST; JANE DUNBAR, an individual; and ANNETTE RINALDO, an individual. | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, The Phoenix Insurance Company, by and through its attorney, Montgomery Amatuzio Chase Bell Jones LLP, for its Complaint for Declaratory Judgment pursuant to 28 U.S.C. §2201(a), states as follows:

1

## THE PARTIES

1.      Plaintiff The Phoenix Insurance Company ("Phoenix") is a company incorporated in the state of Delaware with its principal place of business in the state of Connecticut, located at One Tower Square Hartford, CT 06183.

2.      Defendant Jane Kemble Dunbar Living Trust (the "Dunbar Living Trust") is a living trust with an address at PO Box 6791, Sheridan, WY 82801, with the applicable premises located at 40275 Lodge Grass Creek Road, Lodge Grass, MT 59050.

3.      Defendant Jane Kemble Dunbar is an individual resident citizen of the State of Montana and who owns real property located at 40275 Lodge Grass Creek Road, Lodge Grass, MT 59050.

4.      Defendant Annette Rinaldo is an individual resident citizen of the State of Wyoming and who owns real property located at 1116 Laclede St., Sheridan, WY 802801, furthermore, the Underlying Actions provide that Defendant Rinaldo has Wyoming citizenship.

## JURISDICTION

4.      The jurisdiction of this Court is premised upon 28 U.S.C. § 1332, as there is complete diversity of citizenship between Phoenix and Defendants, the Dunbar Living Trust, Jane Dunbar, and Annette Rinaldo (collectively "Defendants") in this action, and the amount in controversy, including the costs of defending Defendants in connection with the allegations of the underlying actions, as set forth below, exceeds the sum of $75,000, exclusive of interest and costs. Plaintiff files this Complaint and seeks relief pursuant to the Wyoming Uniform Declaratory Judgment Act, W.S. 1-37-115 and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

2

5.      Upon information and belief, the defense costs for Defendants in the underlying actions have already exceeded or will exceed $75,000 in total.

6.      This Court has authority to declare the rights and obligations of the parties under the terms and provisions of the insurance policy at issue in this lawsuit, as provided by Rule 57 of the Federal Rules of Civil Procedure.

## VENUE

7.      Venue is properly in this Court premised upon 28 U.S.C. § 1391 (a) and (c), in that the Dunbar Living Trust and Defendant Rinaldo are subject to personal jurisdiction in this District at the time this action was commenced due to the following:

a.  The insurance policy at the subject of this matter was negotiated, executed, and issued in the District of Wyoming;

b.  The agent who sold the applicable insurance policy (Tegeler & Associates Inc.) operates under Wyoming state laws with a Wyoming address, PO Box 829, Pinedale, WY 82941;

c.  The insurance policy issued to the Dunbar Living Trust provides farm liability coverage to the Dunbar Ranch, a business registered under the state of Wyoming, with a primary address of PO Box 6791, Sheridan, WY 82801.

## GENERAL ALLEGATIONS

8.      Phoenix issued Farm Liability Coverage Policy, Policy Number 715-9662B408-PHX-20, to the Dunbar Living Trust effective from August 22, 2020, to August 22, 2021, with a per occurrence liability coverage limit of $1,000,000.00 (the "Policy"). The material portions of a certified copy of the Policy are attached hereto as **Exhibit A** and made part hereof by reference.

9. The Phoenix Policy contains the following insuring agreement:

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.

*　　　　*　　　　*

b.  This insurance applies "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
(2) The "bodily injury" or "property damage" occurs during the policy period . . . .

*　　　　*　　　　*

c. "Bodily injury" or "property damage" that occurs during the policy period and was not, prior to the policy period, known to have occurred by:
(1)  Any "insured" listed under Paragraph a. of Definition 12. "Insured"; or
(2)  Any employee authorized by you to give or receive notice of an "occurrence or claim;

Includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

10.     The Farm Liability Coverage Form contained in the Phoenix Policy is subject to the following exclusions:

2.  Exclusions

This insurance does not apply to:

*　　　　*　　　　*

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured" even if the resulting "bodily injury" or "property damage":

(1) Is of a different kind, quality or degree than initially expected or intended; or

(2) Is sustained by a different person, entity, real or personal property, than initial expected or intended.

*                *                *

**o. Employers' Liability**

"Bodily injury" sustained by:

(1) Any employee (other than a "residence employee") as a result of his or her employment by the "insured";

(2) Any "residence employee", unless the "residence employee" makes a written claim or brings "suit" no later than 36 months after the end of the policy period; or

(3) The spouse, child, parent, brother or sister of any employee as a consequence of "bodily injury" to that employee.

This exclusion applies whether the "insured" may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

*                *                *

**w. Sexual Molestation, Corporal Punishment of Physical or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse;

11.    Relevant terms in the Phoenix Policy are defined as follows:

5. "Bodily injury" means bodily injury, sickness or disease sustained by a person, and includes death resulting from any of these at any time.

*                *                *

12. "Insured"
a. "Insured" means you, and if you are:

*                *                *

(4) An organization other than a partnership, joint venture, or limited liability company, "insured" also means:

(a) Your executive officers and directors, but only with respect to their duties as your officers and directors; and

5

(b) Your stockholders, but only with respect to their liability as stockholders.

\*          \*          \*

c. "Insured" also means any person (other than your employee) or any organization while acting as your real estate manager.

\*          \*          \*

18. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*          \*          \*

22. "Residence employee" means an "insured" employee:
   a. Whose duties are principally in connection with the maintenance or use of the "residence premises", including household or domestic services; or
   b. Who performs duties of similar nature to those described in Paragraph a. above:
      (1) Not a the "residence premises"; and
      (2) Not in connection with the "business" or "angertainment" of any "insured".

23. "Residence premises" means:
   a. Your principal residence; and
   b. The grounds and structures appurtenant to your principal residence.
   "Residence premises" does not include any party or parts of a building or structure that are used for "business" or "agritainment."

\*          \*          \*

12. Exclusion – Employment-related practices

This Insurance does not apply to "bodily injury" to:
   a. A person arising out of any:
      (1) Refusal to employ that person:
      (2) Termination of that person's employment; or
      (3) Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution direct at that person;

\*          \*          \*

6

THE UNDERLYING ACTIONS

13.    On July 28, 2023, Amy Peterson filed a complaint of discrimination with the Human Rights Bureau of the State of Montana ("HRB") styled, *Amy Peterson v. Jane Dunbar and Annette Rinaldo*, HRB No. 0230342. A copy of the Peterson Complaint is attached hereto as **Exhibit B**.

14.    On July 28, 2023, Lane Schenderline filed a complaint of discrimination with the HRB styled, *Lane Schenderline v. Jane Dunbar and Annette Rinaldo*, HBR No. 0230343. A copy of the Schenderline Complaint is attached hereto as **Exhibit C**.

15.    On July 28, 2023, Molly Trocha also filed a complaint of discrimination with the HRB styled, *Molly Trocha v. Jane Dunbar and Annette Rinaldo*, HBR No. 0230344. A copy of the Trocha Complaint is attached hereto as **Exhibit D**. (The Peterson Complaint, the Schenderline Complaint, and the Trocha Complaint are collectively referred to as the "Underlying Actions").

16.    In his Complaint, Mr. Schenderline asserts that he began working for Defendant Dunbar on her ranch in Big Horn County, Montana in 2007.

17.    Mr. Schenderline's Complaint further asserts that approximately nine (9) years after he started working for Defendant Dunbar she moved him and his family to the ranch. He states that this is when Defendant Dunbar began behaving in a "sexually aggressive manner" towards him.

18.    Mr. Schenderline's Complaint alleges that he engaged in a sexual relationship with Defendant Dunbar for several years, up until 2021 when his wife decided she could no longer tolerate the relationship.

19.     Mr. Schenderline's alleges Defendant Dunbar engaged in various instances of inappropriate behavior and sexual misconduct between 2021 through 2023, up until he was put on paid leave on June 16, 2023. Furthermore, his Complaint alleges that he tried reporting the inappropriate behavior to Defendant Rinaldo, however, she failed to provide help or support.

20.     Mrs. Peterson's and Mrs. Trocha's respective Complaints are mirror image Complaints, alleging the women began to work for Defendant Dubar in or around January 2021.

21.     Mrs. Peterson and Mrs. Trocha allege when they began to work for Defendant Dunbar throughout their employment and, during the course of their employment, Defendant Dunbar began behaving inappropriately around both of them, including engaging in various sexual advances and making inappropriate comments regarding the women's bodies and their weight.

22.     Mrs. Peterson and Mrs. Trocha Complaint's assert they approached Defendant Rinaldo, who had a management role at Defendant Dunbar's ranch and regularly engaged in activities such as directing payroll and serving as a de facto Human Resources officer, about the inappropriate behavior. However, Defendant Rinaldo failed to provide any assistance or protection.

23.     The Underlying Actions each allege (1) discrimination on the basis of sex (sexual harassment); (2) discrimination on the basis of sex (sexual assault); and (3) retaliation.

24.     The Underlying Actions seek to recover damages from Defendant Dunbar and Defendant Rinaldo for injuries Mr. Schenderline, Mrs. Peterson, and Mrs. Trocha allegedly suffered as a result of the described conduct.

25.     Defendants have sought coverage under the Policy, including defense and indemnification, for the claims asserted in the Underlying Actions.

<u>COUNT ONE – NO DUTY TO DEFEND THE DUNBAR LIVING TRUST</u>

26.     Phoenix re-alleges and incorporates by reference the allegations contained in paragraphs 1 - 24 above, as if set forth fully herein.

27.     The Dunbar Living Trust is the named insured under the Policy.

28.     The Dunbar Living Trust is not included as a defendant in the Underlying Actions.

29.     Defendants Dunbar and Rinaldo have requested and sought coverage under the Phoenix Policy issued to the Dunbar Living Trust.

30.     Based upon the foregoing language in the insuring agreement of the Phoenix Policy, the exclusions and definitions contained therein operate to exclude any potential coverage for damages potentially awardable to Mrs. Peterson, Mrs. Trocha, and/or Mr. Schenderline in the Underlying Actions.

31.     The damages complained of by Mrs. Peterson, Mrs. Trocha, and/or Mr. Schenderline do not constitute damages for "bodily injury" caused by an "occurrence" as those terms are used in the Policy.

32.     Any coverage under the Policy, the existence of which Phoenix disputes, would be, arguendo, unambiguously excluded by the Expected or Intended Injury, the Employers' Liability, and/or the Sexual Molestation, Corporal Punishment of Physical and Mental Abuse exclusions.

33.     There is no potential duty on the part of Phoenix to indemnify the Dunbar Living Trust from or against the allegations made in the Underlying Actions. Such being the case, Phoenix has not duty to defend the Dunbar Living Trust in the Underlying Actions.

34.     If Phoenix was required to defend the Dunbar Living Trust in the Underlying Action it would be unjustly enriched and obtain benefits not provided for under the Policy.

Therefore, if a provisional defense is extended to the Dunbar Living Trust, Phoenix is entitled to recoup the fees and costs incurred in said defense from the Dunbar Living Trust once Phoenix's non-liability for that defense is judicially recognized.

35.     To the extent the Policy affords any duty to defend the Dunbar Living Trust, the existence of which duty Phoenix expressly denies, any such duty is solely to defend suits seeking damages potentially covered by the Policy. Phoenix has no duty to prosecute, or to fund the prosecution of, the affirmative claims of any insured.  To the extent Phoenix has paid for, or may pay in the future, attorneys fees and/or costs incurred in the prosecution of any affirmative claims by the Dunbar Living Trust, the insurer is entitled to the return of those sums from the insured that incurred those expenses.

36.     Any and all preconditions, if any, to the brining of this action by Phoenix have been met or waived.   Equity dictates that this action proceeds to resolution as expeditiously as possible in order to determine the rights of the parties under the Policy in advance of any resolution of the underlying liability case.

37.     The foregoing allegations do not constitute all potential grounds upon which Phoenix may be judicially determined to have no liability to any defendants herein, but rather only those grounds known based upon present knowledge, information and belief.  Phoenix respectfully reserves its rights to continue its investigation and discovery during the pendency of this action, and to supplement, expand, or modify its coverage defenses as may be warranted in light of information thereby obtained.

COUNT TWO – NO DUTY TO DEFEND JANE DUNBAR OR ANNETTE RINALDO

38.     Phoenix re-alleges and incorporates by reference the allegations contained in paragraphs 1 – 35 above, as if set forth fully herein.

39.     Based upon the foregoing insuring agreement language in the Phoenix Policy, the exclusions and definitions contained therein operate to exclude any potential coverage to Defendant Dunbar and Defendant Rinaldo for damages potentially awardable to Mrs. Peterson, Mrs. Trocha, and/or Mr. Schenderline in the Underlying Actions.

40.     The damages complained of by Mrs. Peterson, Mrs. Trocha, and/or Mr. Schenderline do not constitute damages for "bodily injury" as those terms are used in the Policy.

41.     Any coverage to Defendants Dunbar and/or Rinaldo under the Policy, the existence of which Phoenix Disputes, would be, arguendo, unambiguously excluded by the Expected or Intended Injury, the Employers' Liability, and/or the Sexual Molestation, Corporal Punishment of Physical and Mental Abuse exclusions.

42.     There is no potential duty on the part of Phoenix to indemnify either Defendant Dunbar or Defendant Rinaldo from or against the allegations made against them in the Underlying Actions. Such being the case, Phoenix has no duty to defend either Defendant Dunbar or Defendant Rinaldo.

43.     Defendants Dunbar and/or Rinaldo would be unjustly enriched and obtain benefits not provided for under the Policy if Phoenix was required to defend either party in the Underlying Action.   Therefore, if a provisional defense is extended to Defendant Dunbar and/or Defendant Rinaldo, Phoenix is entitled to recoup the fees and costs incurred in said defense from Defendant Dunbar and/or Defendant Rinaldo once Phoenix's non-liability for that defense is judicially recognized.

11

44. To the extent the Policy affords any duty to defend Defendant Dunbar and/or Defendant Rinaldo, the existence of which duty Phoenix expressly denies, any such duty is solely to defend suits seeking damages potentially covered by the Policy. Phoenix has no duty to prosecute, or to fund the prosecution of, the affirmative claims of any insured. To the extent Phoenix has paid, or may pay in the future, for attorneys' fees and/or costs incurred in the prosecution of any affirmative claims by Defendant Dunbar and/or Defendant Rinaldo, the insurer is entitled to the return of those sums from the insured that incurred those expenses.

45. Any and all preconditions, if any, to the bringing of this action by Phoenix have been met or waived. Equity dictates that this action proceed to resolution as expeditiously as possible in order to determine the rights of the parties under the Policy in advance of any resolution of the underlying liability case.

46. The foregoing allegations do not constitute all potential grounds upon which Phoenix may be judicially determined to have no liability to any Defendants herein, but rather only those grounds known based upon present knowledge, information and belief. Phoenix respectfully reserves its rights to continue its investigation and discovery during the pendency of this action, and to supplement, expand, or modify its coverage defenses as may be warranted in light of information thereby obtained.

REQUEST FOR RELIEF

47. Based upon the foregoing facts and the attached exhibits, there presently exists a justiciable controversy as to whether a duty to defend exists under the Phoenix Policy as to the claims that asserted against Defendant Dunbar and Defendant Rinaldo in the Underlying Actions.

48. Accordingly Phoenix respectfully requests the following relief:

(1)    That the Court declare that there is no duty to defend Defendant Dunbar under the Phoenix Policy for the claims asserted against her in the Underlying Actions;

(2)    That the Courts declare that there is no duty to defend Defendant Rinaldo in under the Phoenix Policy for the claims asserted against her in the Underlying Actions.

(3)    That the Court declare that there is no duty to defend the Jane Kemble Dunbar Living Trust under the Phoenix Policy for the claims asserted in the Underlying Actions;

(4)    That the Court declare that there is no duty to indemnify Defendant Dunbar under the Phoenix Policy for the claims asserted against her in the Underlying Actions;

(5)    That the Courts declare that there is no duty to indemnify Defendant Rinaldo in under the Phoenix Policy for the claims asserted against her in the Underlying Actions;

(6)    That the Court declare that there is no duty to indemnify the Jane Kemble Dunbar Living Trust under the Phoenix Policy for the claims asserted in the Underlying Actions;

(7)    That the Court grant other and further relief as this Court deems just and proper.

WHEREFORE, Phoenix prays for a speedy hearing in accordance with F.R.C.P. Rule 57 and a declaratory judgment pursuant to the authority set forth in 28 U.S.C. sections 2201 and 2202 adjudging and determining the rights and obligations of the parties, finding that there is no coverage afforded to Defendant Dunbar, Defendant Rinaldo, and/or the Dunbar Living Trust under the Phoenix Policy for the claims asserted in the Underlying Actions, and further adjudging that

Phoenix has no duties to either defend or to indemnify any of the Defendants pursuant to the Underlying Actions.

Phoenix further prays for an award of its costs of suit, attorney's fees, defense costs incurred in the underlying liability case, and for such other damages and other relief as prayed above and as the Court may deem just and proper.

**PHOENIX DEMANDS A TRIAL BY A JURY ON ALL ISSUES SO TRIABLE**.

Filed on February 27, 2023.

MONTGOMERY AMATUZIO
CHASE BELL JONES, LLP

By: *s/ Taylor G. Ostrowski*
Taylor G. Ostrowski

4100 E. Mississippi Ave., 16th Floor
Denver, Colorado 80246
Telephone: (303) 592-6600
tostrowski@mac-legal.com

Attorney for The Phoenix Insurance Company

14